649 A.2d 885

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
ANDRE SAUNDERS, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 1, 1994—Decided November 29, 1994.

Before Judges LANDAU, CONLEY and NEWMAN.

*Stephen W. Kirsch,* Assistant Deputy Public Defender, argued the cause for appellant (*Susan L. Reisner,* Public Defender, attorney; *Jacqueline E. Turner,* Assistant Deputy Public Defender, of counsel and on the letter-brief).

*Robert E. Bonpietro,* Deputy Attorney General, argued the cause for respondent (*Deborah T. Poritz,* Attorney General, attorney; *Mr. Bonpietro,* of counsel and on the letter brief).

The opinion of the court was delivered by

LANDAU, J.A.D.

Defendant, Andre Saunders, was indicted and tried before an Atlantic County jury on charges of murder, *N.J.S.A.* 2C:11-3a(1), 3a(2) (count one); second degree attempt to cause serious bodily injury (aggravated assault), *N.J.S.A.* 2C:12-1b(1) (count two); third degree attempt to cause bodily injury with a deadly weapon (aggravated assault), *N.J.S.A.* 2C:12-1b(2) (count three); possession of a handgun for an unlawful purpose, *N.J.S.A.* 2C:39-4a (count four); fourth degree aggravated assault, *N.J.S.A.* 2C:12-1b(4) (counts five, six, seven, eight and nine); and unlawful possession of a handgun, *N.J.S.A.* 2C:39-5b (count ten).

On September 26, 1991, the jury acquitted defendant of murder and of the aggravated assault counts charging attempt to cause serious bodily injury, or bodily injury with use of a deadly weapon, to certain named persons other than the victim. Saunders was found guilty of aggravated manslaughter, a lesser included offense of murder; two counts of simple assault, as the lesser included offenses of the second and third degree aggravated assault attempt counts two and three; one count of possession of a handgun for an unlawful purpose; one count of unlawful possession of a handgun; and the five counts of fourth degree aggravated assault based upon "knowingly under circumstances manifesting extreme indifference to the value of human life" pointing a firearm at another, whether or not it was believed to be loaded.

Saunders was sentenced to the custody of the Commissioner of the Department of Corrections for thirty years with fifteen years of parole ineligibility on the aggravated manslaughter conviction. The simple assault counts, two and three, were merged with other counts. Saunders received a concurrent sentence of ten years with a five year parole disqualifier on the possession of handgun for unlawful purpose, count four; and combined sentences of eighteen months without parole on each of the counts numbered five through ten. He was also sentenced to a concurrent four year term on a separate violation of probation conviction. VCCB penalties were imposed.

■ On appeal Saunders asserts that the trial judge erred prejudicially by failing, over objection, to differentiate adequately between aggravated and reckless manslaughter in the jury instructions, and that this problem was compounded, over objection, by the omission of a reckless manslaughter charge when the judge repeated the murder and aggravated manslaughter instructions in response to jury questions raised during their deliberations. Saunders also contends that the maximum possible sentence of thirty years with fifteen years of parole ineligibility, imposed on the aggravated manslaughter count, was excessive.

The convictions under review arise out of a street incident. Saunders, on probation for a prior bribery conviction, exchanged words with an acquaintance about their respective handguns. Shortly thereafter, he pointed a semi-automatic handgun at a group of several young men and fired. The other gun owner, who was in the group, pretended to be shot and fell to the ground, but he was actually unhurt. However, one block away, a four year old boy playing outdoors was hit by the ricochetting bullet. The child died of the wound. Saunders fled the state after the shooting, but ultimately returned to Atlantic City and turned himself in.

During trial, Saunders disclaimed any intention to shoot or injure anyone, said he believed that the gun was unloaded and secured by a safety, but acknowledged that he became frightened when he realized someone had been shot and that he ran away. Although the discarded gun was never found, the caliber of the bullet removed from the victim's stomach was consistent with Saunders's weapon. The bullet's scarring and imbedded foreign matter suggested that it struck the sidewalk before hitting the victim.

Our analysis of the evidence satisfies us that it was sufficient for the jury reasonably to have determined that Saunders intentionally fired the weapon, that the bullet caused the victim's death, that the firing was reckless [1], and that Saunders acted under circumstances manifesting extreme indifference to the value of human life.[2]

However, while the evidence was sufficient to support an aggravated manslaughter conviction, we agree with Saunders' argument

---

[1] With awareness of and conscious disregard of a substantial and unjustifiable risk that death would result from his conduct, in light of the nature and purpose of defendant's conduct and the circumstances known to him. *See N.J.S.A.* 2C:2-2b(3); 2C:11-4.

[2] Whether under circumstances involving a *probability* of death, defendant acted in a way which showed that he was indifferent to risk of death. *See State v. Curtis,* 195 *N.J.Super.* 354, 364–65, 479 *A.2d* 425 (App.Div.), *certif. denied,* 99 *N.J.* 212, 491 *A.2d* 708 (1984).

respecting the inadequacy of judicial attention given in the several jury instructions to a reckless manslaughter alternative. In this regard, we have read the entire charge and the supplemental instructions to determine whether, taken as a whole and in context, the jury was adequately focused on the distinction between reckless and aggravated manslaughter, particularly given the distant and unlikely victim, the faked fall to the ground of Saunders's ostensible target, and the downward trajectory of the bullet towards a sidewalk.

In *State v. Curtis,* 195 *N.J.Super.* 354, 364, 479 *A.*2d 425 (App.Div.), *certif. denied,* 99 *N.J.* 212, 491 *A.*2d 708 (1984), we explained:

> This difference in degree is to be established by the second element in aggravated manslaughter which is not required in a reckless manslaughter case. We envision that the Legislature intended that the degree of risk in reckless manslaughter be a mere possibility of death. In aggravated manslaughter, however, the additional element that death be caused "under circumstances manifesting extreme indifference to human life" elevates the risk level from a mere possibility to a probability.

We also noted that:

> The relevant 'circumstances' are objective and do not depend on defendant's state of mind. The degree of recklessness must be determined from all the surrounding circumstances. The ultimate question for the factfinder is whether the homicide was committed under circumstances involving a mere possibility of death or did the circumstances involve a probability of death. If the former, the verdict must be reckless manslaughter, but if the latter the verdict must be aggravated manslaughter.
>
> [*Id.* at 364–65, 479 *A.*2d 425.]

*See also State v. Breakiron,* 108 *N.J.* 591, 605, 532 *A.*2d 199 (1987).

In response to *Breakiron* and *Curtis,* the Model Charge on Murder and Aggravated/Reckless Manslaughter, revised as of June 24, 1991, recommended that the jury be told, in pertinent part:

> If, in light of all the evidence, you find that defendant's conduct resulted in a probability as opposed to a mere possibility of death, then you may find that he/she acted under circumstances manifesting extreme indifference to human life. On the other hand, if you find that his/her conduct resulted in only a possibility of death, then you must acquit him/her of aggravated manslaughter and consider the offense of reckless manslaughter, which I will explain to you shortly.

Here, the jury was correctly charged on the aggravated manslaughter count that, "[W]ith respect to aggravated manslaughter,

the defendant must have acted in a way under circumstances involving a probability of death." No mention was made, however, of the probability-possibility distinction emphasized in *Curtis*, endorsed by the Supreme Court in *Breakiron*, and specifically recommended in the model charge extant at the time of trial. An abbreviated charge given on reckless manslaughter merely told the jury that the element of acting under circumstances manifesting extreme indifference to human life was not a requisite for reckless manslaughter.

Attention to the probability-possibility distinction was particularly required here for three reasons.

First, while the evidence was adequate to sustain a guilty verdict on aggravated manslaughter, the circumstances surrounding the shooting were also highly amenable to a finding of *possibility*, as distinct from probability, of causing a death. That distinction should have been put to the jury in the charge, when distinguishing between reckless and aggravated manslaughter.

Second, by omitting any reference to the reckless manslaughter alternative when responding to jury questions, this alternative became disproportionately submerged.

Finally, one of the questions asked by the jury was specifically framed in terms of "possibility", and although focused on murder, all of its questions suggest that the jury wanted to know more about the legal consequences of purposefully shooting a gun when the shooter knows it *could* kill or maim.

During deliberations the jury asked the court, "[D]oes the prosecutor have to prove there was an intent to murder one of the boys or does the fact that he knows the *possible* result of shooting his gun *could* constitute murder?" (Emphasis provided.) The court determined that the question was unclear and decided to reread the murder and aggravated manslaughter charges.

The jury then sent another note to the judge, which read, "If you aim a loaded weapon at a group of persons and fire, resulting in the death of any individuals, is that constituting [sic] murder,

knowing it *can* maime. [sic] or kill?" (Emphasis provided.) With the consent of both counsel, the court responded by writing on the note, "I believe that my answer to your last question answered this one." The jury asked a third question:

> [K]nowingly or purposely shooting a loaded weapon, is this murder? Do you have to intend to murder or maime [sic] or just the fact of aiming and firing a loaded weapon at a group, is this murder, not knowing the results?

The court responded:

> In order to be guilty of murder, it must be proved beyond a reasonable doubt that the defendant, on the occasion in question, had the purpose *to kill or to cause* serious bodily injury to someone or that he was aware that what he did do, would cause danger or serious bodily injury or was practically certain to cause death or serious bodily injury to someone.

Shortly thereafter, the court received a fourth and final inquiry from the jury, stating:

> Our problem is with this: If he pulled the trigger knowing it would kill or maime [sic] is this murder? If he pulled the trigger, knowing he *could* kill or maime [sic], is this murder? (Emphasis provided.)

Defense counsel did not object to the court reiterating the elements of murder, as it had done with respect to the third question, but also asked that the court reread the elements of reckless manslaughter. The court refused, reasoning that this was not required in order to answer the question asked.

The jury found defendant guilty of aggravated manslaughter.

■ The jury's questions sent to the court during deliberations evidenced its concern about the legal differences between a *would* or *could* scenario, and about the consequences of defendant's awareness of "possible" results of shooting the gun. Considering the failure of the jury charge to incorporate the *Curtis*-based distinction between possibility and probability contained in the most recent model charge recommendations, and the court's refusal to mention reckless manslaughter when recharging on murder and aggravated manslaughter, we cannot say that the instructions adequately informed the jury that if death were deemed only a "possible" result of defendant's conduct, reckless manslaughter was an appropriate verdict.

Accordingly we reverse the aggravated manslaughter conviction, and remand for retrial. The other convictions were not contested and are unaffected by this ruling.

Saunders's argument, respecting sentence on the aggravated manslaughter conviction, is mooted by our opinion.